MILLER, Judge
(dissenting).
In determining the standard of care of a reasonably prudent man to see obstructions in his path, the majority has followed cases (Kuhn and Youngblood, infra) where the pedestrian was not (as plaintiff was) engaged in checking traffic for an opportunity to cross a heavily trafficked street.
I could agree if this accident occurred on private property as in Kuhn v. Oulliber, 225 So.2d 317 or where plaintiff knew about the hazard on the sidewalk as in Young-blood v. Newspaper Production Company, 158 So.2d 432. But this accident occurred on the main street of the City’s business district where pedestrians should be watching for traffic and not for unmarked hazards such as ropes lying on the sidewalk and hanging from above. On the issue of contributory negligence, the trial court properly applied the standard set in Hudson v. Louisiana Electric Co., 7 La.App. 78 (La.App. 1 Cir. 1927), a case which the majority has not attempted to distinguish. I fail to find manifest error by the trial court and respectfully dissent.
Although the comparative negligence doctrine of Civil Code Article 2323 has not been judicially recognized, it seems relevant (to me) to consider defendant’s gross negligence in determining plaintiff’s standard of care.
Defendant’s employee testified that the ropes were properly secured some eight feet above the sidewalk level, and that when the ropes were not so secured, protective barriers or cones were set to warn pedestrians to avoid the area. This witness testified that the ropes had been left on this pole for two months and pictures in evidence indicate that this half-inch manila rope is worn and darkly colored. At the end of the rope there is about 18 inches of chain and a hook attached to the rope with a metal sleeve. The rope was used as a hand-line to pull equipment and buckets up to the platform some 18 feet above. It was admitted that it was not much trouble to remove the hand-line (Tr. 44); that it was dangerous when the ropes were left on the ground (Tr. 48); and that they have red cones to set out to warn the public when ropes are on the ground (Tr. 47).
To rebut the testimony that the lines were properly secured to the pole, plaintiff proved by three witnesses that the ropes were hanging and lying on the sidewalk for some time before plaintiff became entangled in the fouled lines. Two witnesses who worked in the store across the street saw the situation before the accident and had commented on the danger created by *107 the telephone company. It was so well established that the ropes were hanging down and lying on the sidewalk[1] that defendant has now successfully argued that the pedestrian was contributorily negligent for failing to see such a prominent hazard. But these witnesses were not crossing the heavily trafficked street and therefore did not have the obligation to check or the distraction of looking for approaching traffic from two directions.
A description of the area is relevant to the determination of the standard of care required of this pedestrian. Plaintiff tripped as he stepped in a southerly direction from the sidewalk curb down to Main Street. Main Street takes traffic east and west and it is “T” intersected by Latour Street which takes northbound traffic from Main Street. There is a gasoline service station located in the northeast corner of this intersection and plaintiff brought his vehicle to this station to get gasoline. While getting service he proceeded to the record shop to pick up a microphone. The record shop was located on the south side of Main Street south of the scene of this accident. If Latour street was projected to the south, the record shop would be located in the southwest corner of the intersection. If plaintiff had crossed Main Street by proceeding southwest from the service station, defendant’s ropes would have posed no problem to him. Instead he proceeded (so as not to jay-walk) westerly across Latour and stepped on the sidewalks which are adjacent to the northwest intersection of Latour and Main Streets. The telephone pole is set in the sidewalk about one foot north of Main Street and about eight feet west of Latour Street. There are two other poles near the telephone pole. Each pole appears to be about 2 inches in diameter. One is located about a foot west of the telephone pole and the other is located about the same distance east of the telephone pole. There are two other poles of similar size located some six to eight feet north and northeast of the telephone pole. According to photographs taken about one hour after the accident, two ropes were hanging down about two feet west northwest of the telephone pole and about twelve to fifteen feet of rope, 18 inches of chain together with the metal hook, eye and sleeve were lying on the sidewalk in an area from two to five feet west of the telephone pole and about one to two feet north of Main Street.
While walking in a westerly direction across Latour Street, plaintiff looked at the sidewalk so that he would not trip on the sidewalk curb facing Latour street. He then looked for eastbound and westbound Main Street traffic. He saw a police car coming in a westerly direction and recognizing the policeman he and the policeman spoke to one another. By this time plaintiff was facing south at a position about two feet east of the telephone pole. He hesitated to check further for traffic and as he stepped into Main Street the rope became tangled in his legs or feet causing him to fall. He never saw the ropes until after the fall.
Under the circumstances, I fail to find manifest error in the trial court’s decision that “A pedestrian, preparatory to crossing the street should look for traffic which Mr. Moran did in this case and certainly this court cannot find that he did not act as a prudent and reasonable man.” Tr. 13. Defendant’s negligence is so gross when compared to that of plaintiff, that I hold to the view that plaintiff’s failure to see the ropes should be excused. Hudson v. Louisiana Electric Co., 7 La.App. 78 (La. App. 1 Cir. 1927).
The majority opinion notes that plaintiff’s orthopedic surgeon testified that plaintiff’s history of the accident taken about one week after the accident, did not mention that ropes contributed to the fall. *108 But this is offset by the fact that the history taken by plaintiff’s treating physician only minutes after the accident (Tr. 28) notes that plaintiff fell when he was caught in a hook and rope. Furthermore, plaintiff promptly returned to the scene of the accident to photograph the rope and hook.
I respectfully dissent.

. The telephone company witness finally admitted (Tr. 166) that his helper had worked on this pole earlier that day. The helper was still employed by defendant and was not called to testify. It is presumed that he would admit that he created this unmarked trap.